UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Roger Rahrig, Jr. | ) |
| | ) Case No. 06-3637 |
| Debtor(s) | ) |
| | ) (Related Case: 06-32773) |
| Vera Siebanoller | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| Roger Rahrig, Jr. | ) |
| | ) |
| Defendant(s) | ) |

### DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. At the conclusion of the Trial, the Court deferred ruling on the matter so as to afford the opportunity to thoroughly review the evidence in this case, together with the respective arguments made by the Parties. The Court has now had this opportunity, and finds, for the reasons set forth herein, that the Plaintiff has failed to sustain her evidentiary burden, and thus her Complaint will be Dismissed. With respect to this ruling, the succeeding discussion shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### BACKGROUND

On August 18, 2003, the Defendant/Debtor, Roger L. Rahrig, Jr. (hereinafter the "Defendant"), entered into a contractual relationship with the Plaintiff/Creditor, Vera M. Siebanoller

Vera Siebanoller v. Roger Rahrig, Jr.
Case No. 06-3637

(hereinafter the "Plaintiff"). The purpose of the contract involved several remodeling projects at the Plaintiff's residence. For this, the Defendant prepared separate proposals for each project, including one for the construction of an addition on the back of the Plaintiff's residence as well as another for its re-roofing. In each proposal, the Defendant provided an itemized list of the jobs to be performed. (Pl. Ex. A & Def. Ex. B). Thereafter, the Plaintiff accepted the Defendant's proposals, then writing a check to the Defendant for $11,350.00, the total amount specified by the proposals. (Pl. Ex. B). The Defendant then commenced work a 'couple' of days later.

On September 14, 2003, a disagreement took place between the Parties precipitating the complete termination of any direct contact between them. While many of the facts surrounding the disagreement are disputed, – for example, whether the Defendant physically assaulted the Plaintiff – this much can be deduced. First, after the disagreement, the police were contacted by the Plaintiff who, in turn, contacted the Defendant regarding the Plaintiff's concerns. Second, one day after the disagreement, the Plaintiff hired another contractor to complete those projects which remained unfinished. Third, prior to the disagreement, the Defendant had taken steps to complete those projects for which he had been hired. This work included having building materials delivered to the Plaintiff's residence, constructing walls for the addition to the Plaintiff's residence, and removing from the roof of the Plaintiff's residence the old shingles as well as most of the tar paper.[1]

Based upon these events, the Plaintiff commenced an action in state court, seeking $60,000.00 in damages for the injuries allegedly caused by the Defendant to her property and to her person. On October 4, 2006, the Defendant filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. By way of the instant action, the Plaintiff seeks a

---

[1] Tar paper acts as a barrier between the wood sheeting, which constitutes the roof, and the asphalt shingles which cover it.

Page 2

determination that any debt arising from those injuries she alleges in her state-court complaint should be determined nondischargeable in the Defendant's bankruptcy case.

## DISCUSSION

Before this Court is the Plaintiff's Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a). Proceedings brought to determine the dischargeability of particular debts are deemed core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. *Id.*; 28 U.S.C. § 1334.

In seeking to have her claim against the Defendant held to be a nondischargeable debt, the Plaintiff's complaint states, in the main, that: "the Defendant's discharge should be denied pursuant to the [sic] 11 U.S.C. § 523(a)(6) and judgment should be granted accordingly as the obligation owed by the Defendant was the result of fraudulent and intentional acts by the Defendant." (Doc. No. 1). Based upon this language, the Plaintiff's Complaint appears to assert a cause of action not only under the provision specified, § 523(a)(6) – which excepts from discharge debts resulting from a willful and malicious injury – but also under these other two provisions: § 523(a)(2)(A), excepting from discharge those debts incurred through fraud; and § 727(b), denying a debtor's entire discharge in certain situations when the debtor has been fraudulent toward the bankruptcy process. Yet, regarding these three causes of action, the evidence at Trial only raised the issue of dischargeability. Accordingly, the Court's analysis will only address the Plaintiff's causes of action under §§ 523(a)(2)(A) and (6). *See* 11 U.S.C. § 105(a); *In re Barton*, 321 B.R. 869, 875 (Bankr. N.D.Ohio 2004) (bankruptcy court, under its equitable powers, may revise a pleading to conform to the evidence presented); FED.R.BANKR.P. 7015(b).

Sections 523(a)(2)(A) and (a)(6) provide, in relevant part:

Page 3

**Vera Siebanoller v. Roger Rahrig, Jr.**
**Case No. 06-3637**

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

So as to also further the fresh-start policy of the Bankruptcy Code, these exceptions to dischargeability are narrowly construed in favor of the debtor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (6th Cir. B.A.P. 2004), citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622, 624 (6th Cir.1999). In conformance therewith, the Plaintiff bears the ultimate burden of persuasion to establish, by at least a preponderance of the evidence, the applicability of either § 523(a)(2)(A) or § 523(a)(6). *Grogan v. Garner*, 498 U.S. 279, 11 S.Ct. 654, 291 (1991).

Both § 523(a)(2)(A) and § 523(a)(6) look to whether a debtor intentionally committed a wrongful act. As such, these two provisions help to implement the long-standing principle of bankruptcy jurisprudence that only those debts honestly incurred should be afforded the benefits of a bankruptcy discharge. *Cohen v. de la Cruz*, 523 U.S. 213, 217, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). In this way, this Court previously observed that "while each of these statutory exceptions to dischargeability is applicable in a slightly different context, their lowest common denominator is the same: scienter - that is, a specific intent to actually do the harm, whether it is an intent to defraud/deceive under § 523(a)(2), . . . or the intentional injury to another's property under § 523(a)(6)." *Automated Handling v. Knapik (In re Knapik)*, 322 B.R. 311, 316 (Banrk. N.D.Ohio 2004).

Page 4

Vera Siebanoller v. Roger Rahrig, Jr.
Case No. 06-3637

Concerning the debtor's state of mind, for a debt to be held nondischargeable under § 523(a)(2)(A), a defendant must, with knowledge of a statement's falsity, have acted with the intent to deceive a creditor. *AT & T Universal Card Servs., Inc. v. Rembert (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). For this, the Sixth Circuit Court of Appeals held in the case of *In re Rembert* that, "the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *Id*. Section 523(a)(6) is substantially similar, requiring that a debtor's subjective intent be ascertained. In *Kawaauhau v. Geiger*, the Supreme Court explained that for a debt to be held nondischargeable as the result of a "willful and malicious" act pursuant to § 523(a)(6), the "willful" injury "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998).

However, it will be rare that a debtor would ever actually admit to acting with a wrongful motive, thereby making the scienter requirement of § 523(a)(2)(A) and § 523(a)(6) difficult to establish by way of direct evidence. *De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 604 (D.N.J.1996), *aff'd*. 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The use of circumstantial evidence is thus permitted and often employed when determining whether a debtor subjectively intended to cause harm for purposes of § 523(a)(2)(A) and § 523(a)(6). Although each situation is unique, helpful in this regard are some of the traditional indicia associated with persons who intentionally commit a wrongful act. *In re Knapik*, 322 B.R. at 316.

An often employed indicia, especially with respect to fraudulent actions under § 523(a)(2)(A), centers on a debtor's subsequent conduct. *Williamson v. Busconi*, 87 F.3d 602, 603 (1st Cir.1996). Of particular evidentiary weight in this regard, especially in situations such as this involving a debtor/contractor, is whether the debtor undertook any of the steps necessary to perform as promised. *Mack v. Mills (In re Mills)*, 345 B.R. 598, 605 (Bankr. N.D.Ohio 2006). In this way, a type of an inverse relationship can be found. On the one side, a debtor acting with an intent to defraud will usually not undertake any significant measures toward the performance of their

Page 5

Vera Siebanoller v. Roger Rahrig, Jr.
Case No. 06-3637

obligation. *Accord Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir.1996). Conversely, the opposite is also logically true - when a debtor undertakes significant steps to perform as promised, inferences of fraud are muted. Thus, as a general rule, this Court has observed that the greater the extent of a debtor's performance, the less likely it will be that they possessed an intent to defraud. *Id*.

Under this type of inquiry, the facts bend strongly away from the existence of any intentional wrongdoing on the part of the Defendant. The evidence shows that the Defendant physically began each of the projects for which he was contracted. Additionally, most of the materials required to complete the projects were ordered by the Defendant and then subsequently delivered.

To be sure, the Defendant never did complete any of those projects for which he was hired to perform. However, while this may constitute a breach of contract, the Defendant's subsequent failure to perform, as promised, appears to have been based upon an objectively reasonable inference: That he was not permitted to return to the Plaintiff's residence. For this purpose, the Parties do not dispute that the Plaintiff, who was admittedly very upset with the Defendant, called the police who, in turn, contacted the Defendant. Although the exact nature of their conversations is not known, it is reasonable to assume that the police made it clear to the Defendant that he was not welcome to return to the Plaintiff's residence. Thereafter, the Defendant's perception, that he was no longer welcome at the Plaintiff's residence, could have only been reinforced when the Plaintiff immediately hired another contractor to complete the projects for which the Defendant had been first hired.

The Plaintiff, however, attempts to paint a different picture. In doing so, she did not take issue with the fact that the Defendant initially undertook to perform many of his obligations under the Parties' contract. Rather, it is the Plaintiff's contention that the Defendant made intentionally false representations to her concerning the work he would perform under their contract. Of primary

Page 6

relevance, the Plaintiff testified that, despite language in their written contract to the contrary, the Defendant had represented to her that the sheeting on her roof would be completely replaced, as opposed to being simply repaired where needed. In support of this, the Plaintiff produced a witness whom more or less corroborated her account of events.

The Defendant, however, in his testimony, unequivocally denied making any such representation. And as support for his position, the Defendant pointed to the written proposal he submitted to the Plaintiff which outlined the terms of the Parties' contractual relationship. Therein, it was plainly set forth that he would only "Repair Bad Sheeting." (Def. Ex. B). Absolutely no written representation was made that the sheeting on the Plaintiff's roof would be entirely replaced.

Matters concerning the credibility of testifying witnesses are uniquely within the province of the trier-of-fact, here the Court. *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1394 (8th Cir. 1997), *citing Anderson v. City of Bessember*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). To this end, the Court, after having had the opportunity to observe their demeanor, is convinced that each of the testifying witnesses was subjectively truthful in their account of events. That is, with respect to Plaintiff's contention that the Defendant promised to completely replace the sheeting on her roof, both she and her supporting witness honestly believe that the Defendant had made such a representation. Conversely, the Defendant honestly believes that he never made such a promise.

In the absence of any definitive testimony concerning the representation(s) made by the Defendant as to whether the sheeting on the Plaintiff's roof would be replaced, as opposed to being just repaired, the Court must turn to the only true objective fact: the Parties' written contract, wherein the Defendant only promised to repair, not replace, the bad sheeting. And as this supports the Defendant's account of events, the Court is unable to make a finding that any misrepresentation was

Vera Siebanoller v. Roger Rahrig, Jr.
Case No. 06-3637

made to the Plaintiff concerning the sheeting on her roof. A number of things can explain the divergent account of events given by the witnesses.

First, as an evidentiary matter, the passage of time is notorious for diminishing the quality of a testifying witness' memory, and thus the probative value of such evidence. *United States v. Harrison*, 764 F.Supp. 29, 32 (S.D.N.Y.1991). And in this particular matter, more than three years separates the Parties' testimony from the underlying event. Similarly, it is human nature for people to remember things as they want to believe.

Finally, everyone involved in this matter would agree that there exists a very high level of animosity between the Plaintiff and the Defendant. In this regard, the Plaintiff, from her testimony, seemed to ascribe most of her life's problems to the Defendant. Conversely, it was the Defendant's contention that the state-court litigation, which has been pending between the Parties, was the precipitating factor for him seeking bankruptcy relief, and thus the cause of his financial problems. (Doc. No. 13).

In sum, the evidence in this case shows that the Defendant undertook many of the preliminary steps necessary to perform his contractual obligations to the Plaintiff, that he plainly represented to the Plaintiff his intent to only repair, not replace, the sheeting on her roof, and that the Defendant was reasonable in his belief that the Plaintiff had precluded him from completing the work on her residence. Accordingly, for all these reasons, the Court holds that the Plaintiff has failed to demonstrate that the Defendant possessed the requisite intent to deceive or defraud within the meaning of § 523(a)(2)(A). Additionally, for these same reasons, as well as for those additional considerations now explained, the Court is not persuaded that the Defendant possessed the requisite intent to make a finding of nondischargeability under § 523(a)(6).

06-03637-rls    Doc 17    FILED 08/22/07    ENTERED 08/22/07 13:10:37    Page 8 of 11

Vera Siebanoller v. Roger Rahrig, Jr.
Case No. 06-3637

For a debt to be held nondischargeable in accordance with § 523(a)(6), it must be shown that the debt arose from a "willful and malicious" injury committed by the debtor. As it relates to this type of conduct, the Plaintiff made these allegations: (1) the Defendant intentionally caused holes to be placed in her roof; (2) the Defendant intentionally damaged her gutters; and (3) the Defendant removed the shingles from her roof in a haphazard manner, strewing them all around her property. In response to these allegations, the Defendant, while acknowledging the existence of the conditions about which the Plaintiff complains, denied any intent to injure the Plaintiff. In doing so, the Defendant asserted what, for a number of reasons, the Court can only view as a facially credible explanation: that such conditions resulted from normal construction procedures.

In this way, the evidence showed that, insofar as it concerns her first allegation, the Plaintiff's roof contained preexisting "box-vents" and that these vents likely constituted the "holes" she alleged the Defendant wrongfully placed in her roof. The Defendant's specific explanation regarding the Plaintiff's second allegation also appears viable; the Defendant explained that, so as to not damage her gutters while the roof was being repaired, he only intended to replace the gutters after the re-roofing was complete. Finally, as to the Plaintiff's last allegation, it is the view of the Court that, although the haphazard removal of shingles by the Defendant may be indicative of a lack of professional workmanship, it can hardly be characterized as a "willful and malicious" injury. Indeed, common sense holds that a construction site would not be neat and tidy. Given this, the Defendant's failure to promptly clean up the shingles on the Plaintiff's property is, at worst, negligent; but as the Supreme Court made clear: "debts arising from negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 64, 118 S.Ct. 974.

Before concluding, one final point needs to be addressed. Throughout this proceeding, the Plaintiff made allegations that the Defendant had caused her physical harm such as by pushing her and pouring cola on her. These are very serious allegations. But given their seriousness, they must be corroborated by some form of independent evidence – *e.g.*, a police report or a medical report –

Page 9

Vera Siebanoller v. Roger Rahrig, Jr.
Case No. 06-3637

as opposed to just the Plaintiff's naked statements, against which the Defendant made a vehement denial. Accordingly, as this Court has no corroborating evidence, a finding of nondischargeability cannot be sustained based solely on the Plaintiff's contention that she suffered physical harm.

In summary, the weight of the evidence in this case cannot sustain a finding that, with respect to any debt owed the Plaintiff, the Defendant acted with the requisite scienter to hold that debt nondischargeable under either § 523(a)(2)(A) or § 523(a)(6). At most, the evidence before the Court shows a simple breach of contract which, as a matter of law, is insufficient to sustain a finding of nondischargeabilty under § 523(a). *See, e.g., In re Bucci*, — F.3d — (6th Cir. 2007); *Jacobs v. Ballard (In re Ballard)*, 26 B.R. 981, 985 (Bankr. D.Conn.1983). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Complaint of the Plaintiff, Vera M. Siebanoller, be, and is hereby, DISMISSED.

***IT IS FURTHER ORDERED*** that any claim held by the Plaintiff against the Defendant/Debtor, Roger Rahrig, Jr., be, and is hereby, determined to be a DISCHARGEABLE DEBT.

Dated: August 21, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 22nd day of August, 2007 to:

Roger L. Rahrig, Jr.
204 E. First Street, Lot #11
Spencerville, OH 45887

Robert J Honigford
234 N Main St
Lima, OH 45801-4433

Vera M. Siebanoller
2949 Lakewood Ave.
Lima, OH 45805

William H White
311 N Elizabeth St
Lima, OH 45801

                                                /s/Jennifer S Huff
                                          Deputy Clerk, U.S. Bankruptcy Court